IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM HARRY MINNIX,

        Plaintiff,

        v.

TOBIAS READ, in his official capacity as
Oregon Secretary of State of Oregon,

        Defendant.

Case No. 3:25-cv-01962-AB

OPINION & ORDER

**BAGGIO, District Judge:**

On October 24, 2025, *Pro Se* Plaintiff William Minnix filed an Amended Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendant Oregon Secretary of State Tobias Read.[1] Pl.'s Am. Mot. TRO ("Pl.'s Am. Mot."), ECF No. 9.

---

[1] Plaintiff's original complaint, filed on October 22, 2025, also brought claims against Michael Kaplan in his official capacity as Deputy Secretary of State and Laura Krotzer in her official capacity as Elections Director for the Secretary of State. ECF No. 2. In Plaintiff's amended pleading, Plaintiff no longer brings claims against these defendants. This amendment mooted the Court's inability to identify an official in the Oregon Secretary of State's office named Laura Krotzer.

1 – OPINION & ORDER

Plaintiff is Chief Petitioner for an effort to recall Oregon Governor Tina Kotek. Pl.'s Am. Mot. 1. In his Motion, Plaintiff alleges that Defendant issued a defective gubernatorial recall petition cover sheet that erroneously listed instructions for a county-level recall rather than instructions for a statewide recall. *Id.* at 1–2. Plaintiff alleges this error and others created voter confusion, invalidated legitimate recall petition signatures, and chilled political participation. *Id.* at 1. Facing an October 27, 2025 deadline to submit signatures, Plaintiff seeks a TRO from this Court to extend the deadline 30–60 days. *Id.* at 2.

For the following reasons, the Court denies Plaintiff's Motion for Temporary Restraining Order.

## BACKGROUND

Plaintiff appears to allege that Defendant made two mistakes that have violated his First and Fourteenth Amendment rights. First, Plaintiff alleges that Defendant gave Plaintiff a county-level recall petition form rather than a statewide form. Pl.'s Am. Mot. 2. Both the physical and electronic petition sheets provided by Defendant include instructions to "[o]nly sign this petition if you are an active Oregon voter, registered to vote in the county, city or district where this petition is being circulated . . . ." *Id.* at Exs. B, E, F. Plaintiff argues that these instructions are meant for county-level recalls. In support of his claim, Plaintiff provides a recall sheet for an ongoing recall petition of a county commissioner that includes the same instruction. *Id.* at Ex. D. For contrast, Plaintiff also attaches what appears to be a screenshot of a .jpg file of a statewide recall petition from 2019 where the parallel instruction is "[o]nly active Oregon voters may sign a petition." *Id.* at Ex. C. Plaintiff points to the difference between the 2019 and 2025 instructions as evidence that the Defendant provided him with the incorrect recall sheet. In an October 17, 2025 letter, Defendant told Plaintiff that they are "not prepared to grant [Plaintiff] an extension

2 – OPINION & ORDER

. . . based on claimed inadequacies in the petition instructions. . . . [Defendant] currently has a single set of instructions for all recall petitions." *Id.* at Ex. G at 2.

Second, Plaintiff alleges that Defendant improperly invalidated an electronic signature sheet. Pl.'s Am. Mot. 2. As the Court understands it, on July 28, 2025, Defendant provided Plaintiff with petition sheets with identification number R-2025-3. *Id.* At an unknown date, Defendant provided Plaintiff with a new, or perhaps additional, electronic signature sheet under identification number 24425. *Id.* The 24425 electronic petition sheet states in the upper left corner "Local Recall" even though it is for a statewide recall. *Id.* at Ex. E. Plaintiff alleges that on August 18, 2025, Defendant emailed him to say that form 24425 was invalid and replaced it with form R-2025-3. Pl.'s Am. Mot. 2. It is unclear whether the R-2025-3 sheet was issued before the 24425 sheet and then subsumed by 24425 or whether the R-2025-3 sheet was not issued until August 18, 2025. In the October 17, 2025 letter, Defendant notified Plaintiff that Defendant "will honor signatures on all versions of the electronic signature sheet ('e-sheet') that this office has approved for circulation." *Id.* at Ex. G at 1.

## STANDARDS

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders. Fed. R. Civ. P. 65(b). The legal standards applicable to TROs and preliminary injunctions are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is

likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest. *Id.* at 20.

## DISCUSSION

Plaintiff moves for an emergency TRO. The Court finds Plaintiff has failed to demonstrate a substantial likelihood of success on the merits. The Court further finds that Plaintiff has failed to show irreparable harm in the absence of preliminary relief. The Court addresses these two prongs in turn.

### I. Substantial Likelihood of Success on the Merits

Plaintiff alleges that Defendant's "defective recall form and subsequent administrative confusion constitute a state-imposed burden on political speech and association" in violation of the First and Fourteenth Amendments. Pl.'s Am. Mot. 3. He alleges that he is likely to succeed under the *Anderson-Burdick* balancing test because the Defendant's error serves no legitimate state interest. *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)).

Under *Anderson-Burdick*, a court dealing with a challenge to election law or procedure must:

> [W]eigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick v. Takushi,* 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). The Ninth Circuit has "described this approach as a 'sliding scale'—the more severe the burden imposed, the more exacting our scrutiny; the less severe, the more relaxed our scrutiny." *Ariz. Libertarian Party v.*

4 – OPINION & ORDER

*Hobbs*, 925 F.3d 1085, 1090 (9th Cir. 2019). "A law imposing a minimal burden need only reasonably advance 'important' interests." *Id.* (citations omitted).

Similarly, in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), the Ninth Circuit addressed a Nevada signature gathering requirement for ballot initiatives. *Id.* at 1126. The plaintiffs in *Angle* contended that a Nevada rule "impose[d] a severe burden on core political speech because it [made] it more difficult and expensive to qualify an initiative for the ballot." *Id.* at 1133. The court found that regulations imposing severe burdens must be narrowly tailored and advance a compelling state interest while "'[l]esser burdens . . . trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *Id.* at 1132 (quoting *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006)). [2]

Plaintiff also raises Fourteenth Amendment equal protection arguments. Pl.'s Am. Mot. 3; Pl.'s Am. Mem. 3–4, ECF No. 10. In the context of election law, courts fold equal protection claims into the above-articulated First Amendment tests and "do not engage in a separate Equal Protection Clause analysis." *Anderson*, 460 U.S. at 786 n.7; *see also Republican Party v. Faulkner County,* 49 F.3d 1289, 1293 n.2 (8th Cir. 1995) ("In election cases, equal protection challenges essentially constitute a branch of the associational rights tree."). Therefore, the Court

---

[2] For the sake of Plaintiff's motion, the Court assumes that the *Anderson-Burdick* test applies here. The Court notes, however, that a Nevada district court found that the Ninth Circuit "has not explicitly weighed in on the question of whether the law regulating the initiation of a recall petition implicates ballot access and First Amendment voting rights." *Fight for Nevada v. Cegavske*, 460 F.Supp.3d. 1049, 1055 (D. Nev. 2020). The court held that the recall petition in that case did not raise a cognizable ballot-access claim and therefore *Anderson-Burdick* did not provide the appropriate constitutional inquiry. *Id.* The court then held that the recall petition was most analogous to the framework for ballot initiatives set forth in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012). *Id.* Because the inquiries in *Angle* and *Anderson-Burdick* are so similar, this Court proceeds without this distinction.

5 – OPINION & ORDER

addresses all of Plaintiff's constitutional claims under a sliding scale scrutiny constitutional inquiry.

Turning first to the burdens on Plaintiff's rights, Plaintiff argues that Defendant has "created mass voter confusion, invalidated legitimate petition signatures, and effectively chilled political participation." Pl.'s Am. Mot. 1. To that end, Plaintiff provides two emails—one from October 12 and one from October 13, 2025—from Oregonians who describe the wording of the form as confusing. *Id.* at Ex. H. Plaintiff writes that these emails are an "example of many emails the chief petitioner has received." *Id.* at 3. Plaintiff does not argue that these individuals declined to sign the petition due to the putatively confusing instructions. But even if the petitions are confusing, the Court finds this is at most a lesser burden on Plaintiff's rights, triggering a more relaxed scrutiny focused on whether the State puts forth important, nondiscriminatory interests.

Turning to the State's interests, Plaintiff argues that because the petition sheet language is incorrect, there can be no legitimate state interest. *Id.* at 4. However, in a letter attached as an exhibit, the General Counsel for the Secretary of State wrote to Plaintiff,

> the [Secretary of State] currently has a single set of instructions for all recall petitions. But to address [Plaintiff's] concern that the instructions are ambiguous . . . , the [Secretary of State] already offered . . . to amend the petition cover sheet . . . . [Plaintiff] declined the change . . . . [T]he SOS is certainly willing to develop a form and instructions specific to statewide recall petitions for future use.

*Id.* at Ex. G at 2. In response, Plaintiff states that to amend the petition cover sheet would have required him to start over and that Defendant's willingness to develop a new form makes "clear that [Defendant] has admitted an error in [the] current Recall Petition Cover Sheet." Pl.'s Am. Mot. 2–3.

The Court must make a decision from the information in the record in this truncated proceeding. Defendant asserts it has only one form for recall petitions. The Court notes that at

6 – OPINION & ORDER

the lower left of the petition sheet for an unrelated local recall petition provided by Plaintiff for comparison, the sheet denotes a form number—SEL 349—and a revision date of August 2025. Pl.'s Am. Mot. Ex. D. In other words, it is entirely possible that between 2019—the date of Plaintiff's .jpg file showing alternative statewide instructions— and 2025, Defendant initiated a revision, or perhaps multiple revisions, as the Defendant is authorized to do pursuant to Oregon Revised Statute § ("ORS") 250.015. This would be neither arbitrary nor capricious, as Plaintiff contends. And whether Plaintiff, or for that matter this Court, thinks the most recent revision could be written more clearly is not grounds for issuance of a TRO.

In sum, the Court finds Plaintiff has not shown a substantial likelihood of success on the merits. Weighing the character and magnitude of the asserted injury against the interests put forth by the State in justification of the burden, the Court finds that the Defendant's asserted use of a uniform form forecloses Plaintiff's substantial likelihood of success.

## II.     Irreparable Harm

Plaintiff alleges he will face irreparable harm at the passage of the October 27, 2025, deadline. The deprivation of a constitutional right is sufficient to establish irreparable injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). The reasons animating the Court's above finding that Plaintiff has not shown a substantial likelihood of success on the constitutional argument informs the Court's rejection of Plaintiff's arguments under *Elrod.* Pl.'s Am. Mot. 4; *e.g.*, *Fight for Nevada*, 460 F.Supp.3d at 1059.

In addition, the Court notes the procedural posture of this case distinguishes it from other cases granting TROs in the context of ballot issues or election procedures. When courts have issued the extraordinary remedy of preliminary relief, it is most often in the context of nefarious

activity in an imminent election. *See Colorado v. DeJoy*, 487 F.Supp.3d 1061, 1064 (D. Colo. 2020) (enjoining the delivery of blanket USPS notices with "false and misleading information about the manner of Colorado's elections"); *Imperial v. Castruita*, 418 F.Supp.2d 1174, 1182 (C.D. Cal. 2006) (granting preliminary relief weeks before a recall election because otherwise the plaintiffs "may be subjected to an illegal election").

Here, the 90-day deadline to submit signatures stems from the date the Secretary of State issued the petition sheets as directed by statute. ORS 249.875. However, Plaintiff does not face external pressures such as a certain date by which ballots are printed or an impending election deadline. A TRO only issues upon a showing of irreparable harm "in the absence of preliminary relief." *Winters*, 555 U.S. at 20. In other words, the Court may only grant the extraordinary relief of a TRO if the harm cannot be repaired at a later date. The Court declines to make such a finding here. If the Court, in later proceedings, determines Plaintiff's First and Fourteenth Amendment rights have been violated, it could grant Plaintiff additional days to collect signatures at that point in time. The urgency of Plaintiff's request is driven by the signature submission deadline and not a broader ballot or election deadline. Plaintiff has not demonstrated irreparable harm.

As for the dispute over the electronic signature sheets, the Court finds the harm both self-inflicted and mooted by Defendant's communications. When a party's "asserted harm is largely self-inflicted," it "'severely undermines' [the party's] claim for equitable relief." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (citing *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993)).

Plaintiff admits that two emails from Defendant—one on August 18 and another on September 12, 2025—regarding the electronic sheets went to his spam folder and that he did not

discover them until October 4, 2025. Pl.'s Am. Mot. 2. The urgency with which Plaintiff asks this Court to act does not square with the factual sequence Plaintiff pleads. In addition, Defendant wrote to Plaintiff that Defendant "will honor signatures on all versions of the electronic signature sheet . . . that this office has approved for circulation." *Id.* at Ex. G at 1. This appears to moot, or at least offset, the harm with respect to the two versions of the electronic sheet, and at minimum renders it not irreparable.

## CONCLUSION

The Court DENIES Plaintiff's Amended Emergency Motion for Emergency Motion for Temporary Restraining Order and Preliminary Injunction [9]. Plaintiff's Emergency Motion for a Temporary Restraining Order [4] is DENIED AS MOOT.

IT IS SO ORDERED.

DATED this __25th__ day of October, 2025.

_____
AMY M. BAGGIO
United States District Judge

9 – OPINION & ORDER